UNITED STATES FIDELITY & GUARANTY CO. *v.* JACKSON ET AL. SAME *v.* DICKSON ET AL.

[72 South. 150.]

1. GUARDIAN AND WARD. *Power of chancery court. Wards' suit to recover funds. Breach of bond. Failure of custodian of funds. Accounting. Recovery against guardian and surety. Conditions precedent.*

   The power of the chancery court, or of the chancellor in vacation, to exact an accounting of the guardian, or to remove a guardian for cause, is unquestioned.

2. GUARDIAN AND WARD. *Ward's suit to recover funds.*

   Minors by next friend, cannot maintain suits against their guardian without some default or breach of the bond.

3. SAME.

   The mere failure of a bank in which a guardian deposited funds of his wards did not operate *ipso facto* as a breach of the guardian's bond.

4. GUARDIAN AND WARD. *Liability for wards' funds. Accounting.*

   Even if a guardian be liable for loss of her wards' funds through the failure of a bank in which she deposited them, yet she should be accorded an opportunity to make good the loss and to render an account of her stewardship on a final accounting of her trust and guardianship before being subject to the wards' suit.

5. Recovery Against Guardian and Surety. *Condition precedent.*

   A minor by next friend cannot maintain a suit against his guardian and her surety to recover funds lost by the failure of a bank in which the guardian had deposited his funds, until the termination of the guardianship.

6. Wards' Suit Against Surety. *Premature character.*

   Where funds of minors were deposited in a bank by their guardian and the bank failed and went into the hands of a receiver, a suit by the wards against their guardian and her sureties was prematurely brought, where the receiver was still paying dividends and there was a possibility that the bank might pay its creditors in full.

Appeal from the chancery court of Wilkinson county. Hon. R. W. Cutrer, Chancellor.

Suits by Clarissa Jackson and others and Lucile Dickson and others against the United States Fidelity and Guaranty Company.

From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. M. Hall,* for appellant.

*W. F. Tucker,* for appellees.

Stevens, J., delivered the opinion of the court.

Appellant prosecutes this appeal from decrees of the chancery court of Wilkinson county rendered against it as surety on the bond of Hattie Jackson, guardian of Clarissa, James, and William Jackson, minors, and also on the bond of Annette Dickson, guardian of Lucile and Modess Dickson, minors. The two cases were by agreement tried together in the court below, and are presented to us in the form of one record. There is no material controversy about the facts in the case. It appears that Hattie Jackson and her three minor children, just mentioned, were each to receive one thousand, five hundred dollars from a railroad company on a personal injury claim, and that Annette Dickson and her two

wards were to receive one thousand dollars each from
a similar source. For the purpose of collecting these
funds it became necessary to have guardians appointed
for the minors; and to this end application was made to
appellant, a corporation doing a regular surety busi-
ness, to become surety upon the bond of Hattie Jack-
son in the penalty of four thousand, five hundred dol-
lars and upon that of Annette Dickson in the penalty
of two thousand dollars. The solicitor who represented
the petitioners in their several applications for guard-
ianship was a local agent of appellant at Woodville,
Miss., and as an inducement to the surety company to
accept the risk—the principals in the bonds being ne-
groes—the local agent had an understanding and agree-
ment with the guardians that the moneys which they
were to receive for their several wards were to be de-
posited in the Citizens' Bank of Wilkinson County,
and could not be drawn out except upon the joint check
of the guardians and appellant's local agent aforesaid.
The funds were collected and deposited in the Citizens'
Bank on or about December 16, 1912; and on the 18th
day of January following this bank closed its doors and
went into the hands of a receiver. In May, 1913, the
wards, by next friend, exhibited their bill of complaint
against their guardians and appellant as surety, setting
out these facts, charging a loss of the funds through the
failure of the bank, and demanded a personal decree
against the guardian and the surety for the full amount
of the trust funds. The record discloses that there
was no application to remove either of the guardians,
but, on the contrary, the guardians were continued in
office and still served as such; and it is to be noted that
the final decree, granting the relief prayed for, is upon
the bond, or, in other words, is against the guardian
and the surety, and directs that the sum due each of the
wards to be paid to the same guardians, against whom the
suit is directed. It does appear that appellant peti-
tioned the court to be released from the bonds after

the failure of the bank, that the application was received and accepted by the court, and that the guardians had given new bonds. Demurrers were interposed to the bill and overruled by the chancellor. Thereafter answers were filed, and the cause submitted on bill, answer, and proof. In the meantime, a small portion of the funds had been lawfully used by the guardians, but the final decree in the Jackson case adjudges appellant indebted by the Jackson minors in the total sum of three thousand, five hundred and seventy-six dollars, and in the Dickson case in the total sum of one thousand, five hundred and eighty-four dollars.

The question on the threshold of this case is the very pertinent inquiry presented by the demurrers to the bill, that is: Can these suits be maintained at all until the guardians have been removed, or at least called upon to make a final accounting of their trust and guardianship? The power of the chancery court, or of the chancellor in vacation, to exact an accounting of the guardians, or to remove a guardian for cause, is unquestioned; but in this case neither of the guardians is in default for failure to render seasonable accounts or to comply with any legitimate order of the court. Indeed, on this point we may quote the exact language of counsel for appellees that:

"In the case at bar the guardians have not wasted the estate of their wards, have not been grossly negligent, have not embezzled the funds, and have not shown themselves unfit for the trust."

The guardians are yet in office, and as such are the sole custodians of the funds in question. It follows, therefore, that the minors, by next friend, could not maintain this suit against their own guardian without some default or breach of the bond. It cannot be that the mere failure of the Citizens' Bank operates *ipso facto* as a breach of the guardian's bond. Conceding, but not deciding, the liability of a guardian for any losses sustained through the failure of `the bank, the

guardian, under any view of the case, should be accorded an opportunity to make good the loss and to render an account of her stewardship. If the minors are in need of funds for maintenance and support, proper orders directing the expenditures could lawfully be made, and the guardian would be required to furnish the allowance as authorized and directed. If the guardian, through the failure of the bank, is rendered insolvent and unfit for the trust, then she can be removed and a more suitable person appointed in her stead. In removing her a final accounting would become necessary; and in the rendition and allowance of this final account the guardian should have an opportunity to claim proper credits and commissions. If upon accepting her final account she is directed to turn over the balance to her successor, and fails to comply with the terms and directions of the decree, then the conditions of her bond would be breached and a proper suit could be instituted on her bond.

Appellant is a surety, and not a principal, and the authorities are in accord in the holding that a suit of this character cannot be maintained before a termination of the guardianship.

One of the leading cases on the subject is that of *Bonner* v. *Evans*, 89 Ga. 656, 15 S. E. 906. The supreme court, in reversing the case, among other things, says:

"If a next friend suing in behalf of the ward can maintain an action for waste . . . or recover money in his hands, it can be done only in connection with a proceeding to remove the guardian and revoke his letters."

In *Ely* v. *Hawkins*, 15 Ind. 230, the court observes:

"The guardian sued is still the guardian of the infants under the original appointment. That has not been revoked. The guardian has not been removed. Till such removal we think the statute does not authorize a judgment against him in a suit by the infant

wards on his bond for the recovery of the funds in his hands.''

To the same effect is the language of the supreme court of Louisiana in *Gibbs* v. *Lum,* 29 La. Ann. 526:

''It is well settled, and indeed elementary, that a minor cannot, pending the tutorship, execute his claims against his tutor; that such demands become executory only at the expiration of the tutorship. Being under tutorship, any moneys recovered would of necessity go immediately back into the hands of the tutor, who would thus, as it were, have money taken out of one pocket and immediately put back into another.''

''Ordinarily the ward cannot, pending the guardianship, maintain an action against the guardian to recover money or property due. No right of action arises in the ward's favor until after there has been a final accounting and a balance has been struck, or until a refusal to account. After the account has been settled the ward may sue for the amount found due, and after termination of the guardianship he may sue for money due him.'' 21 Cyc. p. 186.

See, also, *Minter* v. *Clark,* 92 Tenn. (8 Pickle), 459, 22 S. W. 73; *Mason* v. *Mason,* 19 Pick. (Mass.) 506 ;15 Am. & Eng. Enc. of Law (2d ed.) section 80; Woerner's American Law of Guardianship, p. 152..

It affirmatively appears from the record that substantial dividends have been paid by the receiver of the Citizens' Bank, and there is evidence that the receivership was still pending when the final decree in this cause was rendered, and that additional dividends would likely be declared in favor of all creditors of the bank, and even testimony that possibly the bank might pay its creditors in full. It is for this reason that the final decree recites that, if any further dividends are paid by the receiver, they should be paid to the guardian under the security of her new bond, and that the payment so received should be credited on the amount due the wards under the final decree, and that after a settlement in

full has been made with the wards the defendant paying the same shall be subrogated to all the rights of the ward as against the insolvent bank. It is possible, therefore, that no loss whatever will be sustained; and this only serves to emphasize the fact that the present actions are prematurely brought. Until the affairs of the Citizens' Bank are fully administered the exact loss, if any, cannot be ascertained; and in this regard the case falls within the principle announced in *State* v. *Slevin*, 12 Mo. App. 321, wherein the court observes:

"Until then the amount of his loss is entirely speculative, resting in the opinion of witnesses. . . . The liability of sureties is *strictissimi juris,* and their rights are not to be put to the sport of the opinions of witnesses as to the loss which their principal is liable to make good, when it is open to the person claiming to have suffered such loss, to proceed to ascertain the amount of his loss in the regular and proper way. . . . Having ascertained this, and in the light of the event, it will be more opportune to litigate the question whether the land was inadequate security for the loss at the time the loan was made, and whether the inadequacy was such, under all the circumstances of the case, as to charge the guardian with negligence for which his sureties must answer."

We are persuaded that the demurrer to the bill should have been sustained. We are further of the opinion that the development of the case by answer and proof did not show a default on the part of the guardian and consequent breach of the bond.

The decree of the lower court will be reversed and set aside, the demurrers to the bills sustained, and the bills dismissed without prejudice to the right of complainants to maintain proper actions, if necessary, at a seasonable time.

Reversed, and judgment here for appellant.

*Reversed.*