## DAVIS *v.* DAVIS.[*]

(Division B. April 21, 1924.)

[99 So. 673. No. 23854.]

1. GUARDIAN AND WARD. *Guardian cannot maintain action in chancery against ward.*

A guardian cannot maintain an action, either *in personam* or *in rem* in chancery court against the ward.

2. GUARDIAN AND WARD.  *Decree for guardian in suit against ward should be set aside on motion of ward.*
   A decree in such a suit in favor of a guardian is void, and should be set aside on motion by the ward.

---

*Headnote 1. Guardian and Ward, 28 C. J., section 421 (1925 Annotations); 2 Guardian and Ward, 28 C. J., section 459 (1925 Annotations .

APPEAL from chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Suit by Florence V. Davis against Lee B. Davis. From a decree sustaining a motion to permit defendant to answer, plaintiff appeals. Affirmed and remanded.

*Somerville & Somerville,* for appellant.

When the motion was called for trial, the appellant strenuously objected to the hearing of the motion because of the fact that the final decree rendered in 1916 could not be set aside on mere motion and could only be set aside by a bill prepared and filed for that purpose (bill of review) on which bill, proper process should be issued. The procedure in this case we regard as entirely irregular and first present the question of the right of the chancery court to set aside its previous decrees on mere motion. The rule as to the setting aside of the final decree is well stated by Judge STORY in his Commentaries on "Equity Pleading" (5th Edition, 1852) at pages 482-483 and section 426. Our position is clearly stated by the supreme court in *Commercial Bank* v. *Lewis,* 13 Smedes and Marshall, 226. See, also, *Sagary* v. *Bayless,* 13 Smedes and Marshall, 153.

The rule that a petition for re-hearing cannot be presented after the adjournment of the term of court is

further affirmed in *Foy* v. *Foy,* 25 Miss. 207; *Wiggle* v. *Owen,* 43 Miss. 158, and on second appeal, 45 Miss. 691; *Gardner* v. *Duncan,* 61 So. 545; *Pipkin* v. *Haun,* Freeman's Chancery Reports, 254.

From the standpoint of logic and reasoning we think that the Pipkin-Haun case is absolutely conclusive of the case at bar. In that case it appears that no process was served on Morris and Haun. After the adjournment of the term of court, a motion was made to set aside the final decree because Steel and Jenkins are not noticed by the final decree. The second ground of the motion was that the decree was rendered under a misapprehension of the state of the pleadings and there were several other grounds. The chancellor overruled the motion.

We apprehend the argument in the supreme court will be confined to the question whether the lower court was originally without jurisdiction because no process was served on the complainant as the guardian of the defendant. It would hardly seem necessary to cite any authority to prove that the courts have never required a vain and useless, if not a foolish procedure. What earthly good could be accomplished by serving process on Mrs. Davis as guardian for a defendant in a suit where she represented the adverse interest. This is the first time we have heard of the court being called upon to decide that a party complainant in a suit, must also be served process as a defendant in that suit. This position will not stand the test of logic nor of reason and will not stand the more practical test of common sense. See 12 Ruling Case Law, 1170. Section 293, Hemingway's Code provides that our chancery court has jurisdiction of certain attachment suits.

It has long since been decided by the supreme court of the United States that in cases of this kind the court gets its jurisdiction from the seizure of the real estate or other property and that even though the writ was issued before the petition was filed and irregular for that

ground and even though there was no publication whatever, still, the court got jurisdiction because of the seizure of the property and after the property has been seized and the case proceeded with to final judgment, this judgment is irregular but not void and the judgment cannot be attacked collaterally but may only be attacked by direct appeal.

Now in the present case, there was a complete compliance with the statute with reference to the attachment of the property of non-residents and we deny that there is any defect whatever in the proceedings. But it has been held by many courts that even if the defects existed as complained of by the appellee, still the jurisdiction *in rem* cannot be overcome at this time. *Cooper* v. *Reynolds,* 10 Wall. 308-321; 19 L. C. P. 931.

While the general rule in regard to jurisdiction requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing and, in effect subject it to the control of the court. *Among this latter class is the levy of a writ of attachment or seizure of real estate,* which being incapable of removal, and lying within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the officer's levy of the writ and return of that fact to the court. So the writ of garnishment or attachment, or other form of service, on a party holding a fund which becomes the subject of litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court.

Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it, unquestionably,

is in proceedings purely *in rem*. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form under the seal of the court, and if it is by the proper officer levied upon property liable to the attachment, when such a writ is returned into court, the power of the court over the *res* is established.

We do not deny that there are cases, not partaking of the nature of proceedings *in rem,* when the judgment is to have an effect on personal rights, as in divorce suits, or in proceedings to compel conveyance, or other personal acts, in which the legislature has properly made the jurisdiction to depend on the publication of notice, or on bringing the suit to the notice of the party in some other mode, when he is not within the territorial jurisdiction.

The case of *Voorhees* v. *Bank,* (U. S.) 10 Pet. 449, was much like this, and required stronger presumptions in favor of the jurisdiction of the court to sustain its acts than the one before us. See *Paine's Lessee* v. *Mooreland,* 15 Ohio 435, 45 Amer. Dec. 585. To the same effect are the following cases: *Bruce* v. *Cloutman,* 45 N. H. 37, 84 Am. Dec. 111; *Bk. of Colfax* v. *Richardson,* 34 Or. 518, 75 A. S. R. 664, and see elaborate note at page 283; *Pennoyer* v. *Neff,* 95 U. S. 714; *Hardin* v. *Lee,* 51 Mo. 241; *Freeman* v. *Thompson,* 53 Mo. 183; *Holland* v. *Adair,* 55 Mo. 40; *Gilman* v. *Thompson,* 11 Vt. 643, 34 Am. Dec. 714; *Crowell* v. *Johnson,* 2 Neb. 146; *Gregg* v. *Thompson,* 17 Iowa 107, see also 24 Iowa 217. Other Missouri cases are 55 Mo. 181, and 57 Mo. 160.

*Decree in rem only.* The decree in this case is a decree *in rem*. True it is that the decree recites that the complainant would have of and recover from the defendants, certain amounts, but the court will observe, that the decree shows that the only service in the case giving the court jurisdiction was the attachment of certain

land and the publication of process and the decree re-
cites that the attachment was properly levied and de-
crees that the land is subject to a lien for the payment
of the amount of decree.  The decree then provides that
the land may be sold to satisfy the decree therein ren-
dered but there is nothing in the decree in any way war-
ranting any execution against the defendant L. B. Davis
nor does the decree authorize any procedure to collect
the same save and except only the sale of the land at-
tached.

We say that this is not a personal judgment at all.
See 8 Am. and Eng. Ency. of Law, 326 and 327; *Beach*
v. *Swift*, 2 Conn. 274; *Kenny* v. *Georgens*, 36 Miss. 190;
*Huber* v. *Abbott* (La.), 3 S. R. 259.

It is intimated in the motion that Mrs. Davis could not
sue L. B. Davis because she was his guardian.  True it
is that a guardian cannot sue the ward at law but all of
the authorities recognize the right of the guardian or
ward to sue each other in the equity court.  Authorities
to this effect are found in 71 Am. Dec. 105 and 73 Am.
Dec. 555.

It will be further noticed that the suit is a suit for
a tort and infants are held liable for their torts under
certain circumstances.  See Bigelow on Torts, pages 43 to
46; 38 Cyc. 467; 22 Cyc. 618; *Ferguson* v. *Bobo*, 54 Miss.
127.  We submit that the chancellor erred in sustaining
the motion.

*Everett & Foreman,* for appellee.

The entire proceedings in this case in the chancery
court of Sunflower county were void up to the time the
appellee entered his appearance.  The domicile of the
guardian is the domicile of the ward, and the guardian
cannot sue his ward until after his discharge.  We find
by all the authorities as well as by our statute that the
guardian has the custody and control of the ward and may
change the domicile of the ward even by taking his ward
with him out of the state, provided that is not done to

oust the jurisdiction of the court in which the estate of the ward is being administered. This being the universal rule, we will not burden the court with authorities on this point. 12 R. C. L. 1148; *McLean* v. *Curran,* 113 Miss. 531.

In the case before us no final accounting had been made, the relation of guardian and ward still existed, and nothing had been adjudged as due from the ward to the guardian by the chancery court in which the guardianship was being administered. See also *U. S. Fidelity & Guaranty Co.* v. *Jackson, et al.,* 111 Miss. 755; *Ely* v. *Hawkins,* 55 Ind. 230; *Gibbs* v. *Lum,* 29 La. 526; 21 Cyc. 186.

If the ward cannot sue the guardian until the termination of the guardianship and a final account has been rendered or the guardian removed for refusal to account, then certainly the guardian, whose duty it is to look after the ward's affairs and to keep proper accounts with him, cannot maintain an action against the ward for anything which the guardian might claim against him until after the relationship of guardian and ward has been terminated and he has been discharged as such guardian.

Our next reason for holding the proceedings in this case void up to the time the appellee entered his appearance rests on section 2927 of Hemingway's Code. "It is well-settled law in this state that where a notice is to be given in lieu of personal summons, all of the requirements of the statute as to such notices must be strictly complied with in order to obtain jurisdiction of the person." *Belt* v. *Adams,* 86 S. 587; *Ponder* v. *Martin,* 119 Miss. 196; *Biggs* v. *Ingersoll,* 28 S. 825. See, also, section 2936, Hemingway's Code; *Gibson* v. *Curry,* 83 Miss. 234.

Counsel stresses the fact that the chancellor erred in setting aside all of the decrees which had been taken and allowing the appellee to file his answer on the theory that the chancellor could not set aside these decrees after the term of court had expired at which they were rendered. He cites authorities for his proposition, and he might have cited many other authorities from our own court to that effect, and we do not question that the chancellor has

no right to set aside a decree at a subsequent term of the court if the parties were properly in court when the decree was rendered.

But where the bill fails to show that the defendant is a non-resident, and where it shows that it is an undischarged guardian suing his ward, and where the whole proceedings show that no process of any kind was ever served on the defendant, then as stated in *Gibson* v. *Curry, supra,* the decrees were absolutely void and the defendant was entitled to file his answer.

Jurisdiction may not be assumed for the purpose of establishing a claim and then resort to the land to satisfy it. "There is a manifest distinction between assuming jurisdiction over proceedings to establish title to her rights in land such as removing clouds from title, partitions, foreclosing liens, etc., and on the other hand creating and establishing a personal claim to be satisfied out of lands." *Bunnell* v. *Bunnell,* 25 Federal Report, 251; *Madden* v. *Fielding,* 19 La. 505; *Emerson* v. *Martin,* 53 Mo. 575; *Prosser* v. *Warner,* 47 Vt. 667.

Complainant sues in her individual capacity to recover damages against her ward, and we respectfully submit that this suit cannot be maintained, and that the chancellor was eminently correct when the facts were brought to his attention by the appearance of the appellee in setting aside the former decrees and allowing him to file his answer to the original bill.

*Somerville & Somerville,* for appellant, in reply.

As to a guardian suing her ward, we submit that at most, this could only be a question of error of law, apparent upon the face of the record and that a bill of review is the only remedy for this.

Counsel says that the motion ought to have been sustained because: no process of any kind was ever served on th) defendant. We answer that the record shows conclusively that process was served on certain property of

this defendant.  This is the process which is shown in the record and the jurisdiction has never been claimed except as based on that one process and the property brought into court under and by virtue of that process.

All that the courts have ever held is that any suit between guardian and ward cannot be brought in a court of law but must be brought either in the probate court or the equity court.  As both of these are our chancery court, we see no particular defect about the matter.

It has never been held that guardian and ward cannot sue each other.  On the contrary the law requires that all transactions between guardian and ward must be handled by the court and must be handled under the careful eye of the chancery court.  *Linton* v. *Walker,* 71 Am. Dec. 105, was a case brought by infant children against their father as guardian *de son tort.*  A demurrer was interposed that the case should have been brought in the chancery court and the court held:  ''That a suit in chancery was the appropriate remedy.''

So we insist that the suit was not improper because of the fact that it was a guardian suing a ward.  True it is that the chancery court should require stricter proof in a case of this kind, than in the ordinary case and true it is that the decree would not be binding until the ward became of age, but in the present case, all of this has been fully complied with and the ward does not come within any of the provisions made for his protection.

Argued orally by *A. D. Somerville,* for appellant, and *F. E. Everett,* for appellee.

SYKES, J., delivered the opinion of the court.

The appellant, Florence V. Davis, instituted this suit in the chancery court against the appellee, Lee B. Davis. The original bill was filed in the chancery clerk's office in 1915.  In it the appellant, Mrs. Davis, seeks to recover a certain amount of money, and asks that certain lands of defendant be sold to satisfy the decree.  In other words,

the suit is an attachment suit in chancery to subject the lands of the defendant, Davis, to the satisfaction of her claim. The claim is one in tort. The allegations of the bill are, in effect, that the defendant misappropriated or embezzled certain sums of money from the complainant. The bill also alleges the fact that the defendant is a minor and is a stepson of complainant; that she is the testamentary guardian of defendant; that she is guardian both of his person and estate; that the defendant has absconded from the state of Mississippi, and his whereabouts is unknown.

There was no personal service of process on the defendant, or on herself as guardian, or on any one else. Proof of publication was made for the defendant, and also in compliance with the statutes relating to attachments in chancery. The defendant failed to appear, a decree *pro confesso* and a final decree were duly rendered, and the lands were ordered to be sold to satisfy the indebtedness of the defendant to the complainant. A special commissioner was appointed, and the lands were sold, and bought by the complainant, and this report was confirmed by the chancellor. Some years thereafter this defendant appeared and moved the court to set aside all of the decrees entered in this case and allow him to answer the bill. Over the objection of the complainant the court sustained this motion, and this appeal is here prosecuted to settle the principles of the cause. It is unnecessary to go further into the details of this litigation, or to consider but one question argued by counsel in the cause.

At the time the complainant (appellant) instituted this suit she was the guardian of the appellee (defendant). As such guardian it was her duty to care for and manage the estate of the ward and report her acts and doings to the chancery court. It was her duty to defend any suits brought against her ward. The service of any process in any suit against the ward contemplates a service of this process also upon the guardian. The positions of guardian of a ward and of complainant in a suit against this

ward are antagonistic. As long as this relationship exists, a guardian cannot maintain a suit against the ward; and neither can the ward against the guardian, except under certain exceptional circumstances not here involved. This rule is thus stated in 12 R. C. L., p. 1148, as follows:

"That an action at common law cannot be maintained between a guardian and a ward, while that relation exists, is clear. The character of the relation, the capacity in which the guardian acts, the duty to the ward's property (even if a guardian *ad litem* may be appointed where he is interested), forbid that he should occupy the distinctly adverse position of suitor at common law, especially as to transactions occurring since the guardianship commenced."

It is the contention of the appellant that this rule only relates to suits in the circuit court of this state, and that a guardian has a right to maintain a suit against a ward in the chancery court. This court has expressly decided that a ward cannot maintain a suit in the chancery court against his guardian. In the case of *U. S. Fidelity & Guaranty Co.* v. *Jackson,* 111 Miss. 752, 72 So. 150, the court quotes from many authorities to show that, as long as the relationship between guardian and ward exists, such a suit is not maintainable by the ward against the guardian in any court. The reasons which prohibit a ward from suing his guardian are equally applicable in a suit by a guardian against the ward. In fact, the reasons are stronger for prohibiting the guardian from suing the ward because of his duty to preserve and care for the estate of the ward and represent the ward in any suits against him. The court in the Jackson Case held that the decree of the ward against his guardian was void. Since the guardian cannot maintain a suit of this character against the ward, the decree in this case is void.

It is insisted by the appellant that these decrees in this case should have been attacked by original bill, and not by motion to set aside. Since the decree is void, it is there-

fore a nullity, and does not terminate the action in which it is entered. In this case the appellee could either attack it by an original bill or enter his appearance, as ne did in this case, and move to have it set aside and declared null and void. This rule is thus stated in section 117, Freeman on Judgments (4th Ed.):

"A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree, then, is in reference to its validity; for, if it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action."

The decree of the court in sustaining the motion and permitting the defendant to answer was correct.

*Affirmed and remanded.*