BREWER *v.* HERRON *et al.*

(Division A.   Nov. 12, 1934.)

[157 So. 522.   No. 31320.]

436

**A. F. Gardner, Jr.,** of Greenwood, for appellant.

**R. H. Nason** and **V. B. Montgomery,** both of Belzoni, for appellees.

**Cook, J.**, delivered the opinion of the court.

Appellant, Melanie Brewer, as guardian of her minor brothers and sisters, filed a bill of complaint in the chancery court of Humphreys county against A. P. Herron, former guardian of said minors, and the Fidelity & Deposit Company of Maryland, surety on said former guardian's bond, and the Grenada Bank, seeking to recover the amount of an unauthorized loan made by said former guardian out of the guardianship funds. At the final hearing, the court entered a decree dismissing the bill of complaint, and from this decree the guardian has

appealed. The bill charged that during the time he was guardian of said minors the said A. P. Herron was also cashier of the Bank of Belzoni, a branch of the Grenada Bank; that while acting in this dual capacity he, as such guardian, without previous order of the court or the chancellor authorizing him so to do, purchased from the Grenada Bank a promissory note for three thousand seventy dollars, executed in favor of said bank by one Howard Jones, and transferred to said guardian by indorsement without recourse; that this note was secured by a deed of trust which constituted a first lien on a vacant lot in the town of Belzoni, and a second lien on approximately eighty-three acres of land, the Federal Land Bank of New Orleans holding a first lien thereon to secure the payment of an original principal sum of two thousand dollars, and that the said Howard Jones note also apparently constituted a first lien on the crops raised on said land during the year 1930, and also on certain live stock mentioned therein.

The bill further charged that the security for the note so purchased by the guardian was precarious and inadequate at the time of the purchase, which fact was well known to both the guardian and the Grenada Bank; that the purchase of said note with the money of said minors constituted a breach of duty to the minors by their guardian; and that the proceeds of the crops raised on the lands in the year 1930, and other personal property mentioned in the deed of trust, were not applied to the payment of the note. The bill further averred that the guardian filed an account of his guardianship covering the period from January 15, 1932, to June 6, 1932, and also filed a final account on June 24, 1932, both of which were approved by the court, and on each of which the said Howard Jones note, with interest accrued thereon, was listed under the heading of ''collateral on hand.'' But neither of these accounts, which were exhibited with the bill, contained any reference to the deed of trust securing the same. The bill prayed for a decree against

all the defendants for the full amount of said note and accrued interest, and also prayed that authority be granted to the guardian to surrender the note to the defendants upon the payment of said sum, and for the cancellation of the decree approving the final account of said A. P. Herron, guardian, and discharging him and his surety.

The first question we will consider is whether or not the approval of the annual and final accounts of the guardian, upon which the Howard Jones note was listed as collateral held by the guardian, operated as such ratification or approval of the loan as would relieve the guardian of responsibility for any loss resulting from inadequacy of the security. Section 1885, Code of 1930, provides, in part, as follows:

"Whenever the guardian shall have the money of his ward not needed for current expenditures, or directed to be invested for the ward, he shall apply to the court, or chancellor in vacation, for direction as to the disposition he shall make of it; and the court or chancellor shall determine whether he shall lend it at interest, and upon what security, or how he shall dispose of it; and if the court or chancellor designate the person to whom the loan shall be made, or the security on which it shall be made, and the loan to be so made, responsibility shall not attach thereafter to the guardian. . . ."

The provision of this statute requiring a guardian to apply to the chancery court or the chancellor for authority so to do before investing the funds of his ward is mandatory. Without an antecedent order of the court or chancellor directing him as to the disposition of the surplus funds of his ward, a guardian has no authority to loan or otherwise invest such funds, and where a loan is made without such prior authorization the guardian remains liable for any loss resulting from inadequacy of the security for the loan. The statute relieves the guardian from responsibility only when "the court or chancellor designate the person to whom the

loan shall be made, or the security on which it shall be made, and the loan to be so made." A subsequent order approving an annual or final account does not operate as a ratification of a loan previously made without the authority of the court or chancellor, so as to relieve the guardian from responsibility for loss. The wisdom of the statute in mandatorily requiring the guardian to apply for and secure prior authority to loan or invest the surplus funds of his ward is apparent when we keep in mind the fact that in the approval of guardians' accounts the attention of the chancellor may not be specifically directed and centered upon the matter of the sufficiency of the security. In the case at bar it does not appear from the face of the accounts, or otherwise, that the matter of the character and sufficiency of the security was called to the attention of the chancellor at all. The purpose of the statute was to make it the precedent duty of the chancellor to supervise and control the investment of wards' funds and the security to be taken, and not to leave it to his subsequent discretion as to the best way to protect their interests after the loan had been made and the funds expended. The exact point here under consideration does not appear to have been previously decided by this court, but in the cases of Seward v. Danaher, 105 Neb. 787, 181 N. W. 941, 37 A. L. R. 441, In re O'Brien's Estate, 80 Neb. 125, 113 N. W. 1001, and Mumford v. Rood, 36 S. D. 80, 153 N. W. 921, it was held that the court's approval of the guardian's annual reports, disclosing investments made without an order of court, does not amount to a ratification of his accounts in making such investments so as to protect him from liability with reference thereto.

In support of the decree of the court below the appellee contends that the bill was properly dismissed, because prematurely brought. In the case of United States Fidelity & Guaranty Co. v. Jackson, 111 Miss. 752, 72 So. 150, 152, this court seems to have so held, at least in so far as the liability of the surety is concerned. In

that case the funds of minors were deposited in a bank which failed and went into the hands of a receiver, and it was held that the suit was prematurely brought, since the receiver was still paying dividends, and there was a possibility of payment of creditors in full, the court saying:

"It is possible, therefore, that no loss whatever will be sustained; and this only serves to emphasize the fact that the present actions are prematurely brought. Until the affairs of the Citizens' Bank are fully administered the exact loss, if any, cannot be ascertained; and in this regard the case falls within the principle announced in State v. Slevin, 12 Mo. App. 321. . . ."

In disposing of that case the court held that the suit should be dismissed without prejudice to the right to maintain proper actions, if necessary, at a seasonable time. In that case, however, it was not possible to determine the exact value of the security, nor the amount of the loss, until such indefinite time as the liquidation of the closed bank was completed. In the case at bar the entire matter can be determined in the pending suit by staying the proceedings against the former guardian and his surety until a foreclosure in pais of the deed of trust can be made, or the bill amended so as to authorize the sale of the security, or the foreclosure of the deed of trust by the court, for credit of the proceeds of the sale on the Jones note.

As to the Grenada Bank, the great weight of the evidence supports the view that the loan to Jones was made directly out of the funds of the wards, and that the bank had no connection with, nor interest in, the loan, and as to it we think the decree dismissing the bill of complaint should be affirmed.

The decree of the lower court will, therefore, be affirmed as to the Grenada Bank, while in all other respects it will be reversed and the cause remanded with directions that the proceeding be stayed until a determination

of the amount of the loss, if any, by foreclosure of the deed of trust, or by amending the bill so as to authorize the sale of the security, or a foreclosure thereof under the directions of the court.

Affirmed in part, and reversed in part and remanded.