468 So.2d 41 (1985)
Robert ANTHONY and Ward, Alex H. Anthony
v.
NATIONAL BANK OF COMMERCE, Conservatorship of Estate of Alex H. Anthony, Ward.
No. 55507.
Supreme Court of Mississippi.
April 17, 1985.
David S. Van Every, Columbus, for appellants.
J. Gordon Flowers, Gholson, Hicks & Nichols, Columbus, for appellee.
Before ROY NOBLE LEE, SULLIVAN and ANDERSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Alex H. Anthony and Robert Anthony, Conservator of his person, appeal from an order of the Chancery Court of Lowndes County, Mississippi, dismissing with prejudice the response of Alex H. Anthony to the first annual account of National Bank of Commerce, Conservator of the Estate of Alex H. Anthony, and order approving the first annual account of National Bank of Commerce. The Anthonys contend that the lower court committed the following errors:
(1) The court erred in dismissing with prejudice Ward's Response to Conservator's Petition for Approval of First Annual Accounting, Inventory and Discharge.
(2) The court erred in dismissing with prejudice Ward's Motion to Compel Discovery and Ward's Motion Seeking the Issuance of Subpoenae Duces Tecum, and in denying Ward's right to representation by attorney David S. Van Every.
(3) The court erred in not investigating Ward's and Robert Anthony's exceptions to Conservator's Accounting, requiring Conservator to substantively respond thereto, and making a finding thereon.
(4) The court erred in dismissing Robert Anthony from this cause.

*42 (5) The court erred in proceeding further in this cause after the dismissal of Robert Anthony.
We need discuss and decide only Questions # 1 and # 3, since a determination of them will be dispositive of the other questions.
On May 19, 1982, Grover Anthony, daughter of Alex H. Anthony, filed a petition to appoint conservator of her father. At that time, Alex Anthony was near ninety-five (95) years of age.[1] He outlived three (3) wives, had one daughter, Grover, from a marriage, and five (5) illegitimate children, admitted by him to be his offspring. An additional person claimed to be his illegitimate child. Anthony, at various times, had admitted and denied that he was her father. Alex Anthony obviously was a shrewd businessman. He accumulated an estate consisting of approximately one hundred fifty thousand dollars ($150,000) in cash and numerous parcels of real property for which no valuation or appraisal had been made, but which produced approximately twelve hundred dollars ($1,200) per month in rental income.
After the petition for conservatorship was filed, the following proceedings occurred:
June 14, 1982, an agreed decree was entered appointing National Bank of Commerce of Mississippi Trust Department [NBC] conservator of the estate of Alex Anthony. However, no physicians' certificates were presented and NBC failed to execute an oath or qualify.
December 10, 1982, bill for conservatorship was filed by Alex Anthony.
January 27, 1983, order was entered appointing NBC conservator and ordering an inventory to be filed within fifteen (15) days.
May 6, 1983, NBC executed a conservator's oath and letters of conservatorship were issued to it.
May 23, 1983, NBC filed a petition for approval of first annual accounting, inventory and other relief.
May 26, 1983, NBC filed an amended petition for approval of first annual accounting, inventory and other relief.
June 13, 1983, a summons was issued from the Chancery Clerk's Office for Alex H. Anthony requiring him to respond to the petition for approval of the first annual accounting, inventory and other relief.
July 8, 1983, NBC petitioned the chancery court for permission to resign as conservator.
August 1, 1983, NBC filed a petition for approval of first annual accounting, inventory and discharge.
September 1, 1983, Alex Anthony filed a response to the petition for approval of first annual accounting, inventory and discharge, together with a cross-bill.
November 21, 1983, an order of the chancery court was entered dismissing the response and cross-bill.
November 19, 1983, an order of the chancery court was entered approving the first annual accounting, inventory and other relief prayed for, and fixed attorney's fees and conservator fees.

I.
The threshold question before the Court is whether or not the lower court erred in dismissing with prejudice ward Anthony's response to conservator NBC's petition for approval of its first annual accounting, inventory and other relief.
After an evidentiary hearing on the conservatorship matters, the lower court dismissed the response of Alex Anthony with the following finding:
The voluminous pleadings subsequently filed reflect allegations of misuse, undue influence, unaccounted funds and properties, and accounts and actions extending to periods prior to the original order of June 15, 1982. A perusal of the pleadings reflect that the alleged bases *43 of these causes of action against various persons and institutions are because of the advanced age and inability of the ward to manage his affairs. The inconsistency is that it is this same individual  the ward  who, nevertheless, now alleges to have the ability to contract to employ individual counsel, and yet his pleadings acknowledge the need for continued conservatorship. This Court intervened in this individual's life because it was convinced that he could no longer attend to his personal needs nor care for this estate. No proof has been presented nor arguments made to cause the Court to modify or change its opinion.
Although pleadings have been filed on behalf of the ward acknowledging paternity of certain named individuals, it would, likewise, be inconsistent with the opinion of the Court to accept these pleadings as being binding on the ward if in fact in June of 1982 he did not possess the mental capacity to attend to his own personal needs and that of his estate.
It will, therefore, be the order of the Court that all preliminary issues having been consolidated into this hearing, that all parties other than Grover Anthony are without standing; that the need of a conservatorship for Alex Anthony existed in June of 1982 and has continued to this date and any contractural [sic] actions by him are considered null and void; that all pending inventories and accountings, filed on behalf of the ward, be and are hereby dismissed; that the conservator be and is hereby granted thirty days within which to file amended inventory and accounting reflecting all actions for and on behalf of the ward as of the date of June 15, 1982, being the date of the original agreed decree; that the dismissal of pending petitions are without prejudice to any persons wishing to establish themselves as children of Alex Anthony who may do so as by statute are permitted.
It is further ordered that any obligation or responsibilities granted David S. Van Every by the order of the Court dated January 27, 1983, be and they are hereby terminated; that the said David S. Van Every may submit a statement for services rendered and expenses incurred in overseeing and administering the $500.00 monthly allowance of the ward authorized by the Court.
Any and all other relief sought be and is hereby denied.
In Davis v. Davis, 135 Miss. 214, 223-24, 99 So. 673 (1924), the Court held:
At the time the complainant (appellant) instituted this suit she was the guardian of the appellee (defendant). As such guardian it was her duty to care for and manage the estate of the ward and report her acts and doings to the chancery court. It was her duty to defend any suits brought against her ward. The service of any process in any suit against the ward contemplates a service of this process also upon the guardian. The positions of guardian of a ward and of complainant in a suit against this ward are antagonistic. As long as this relationship exists, a guardian cannot maintain a suit against the ward; and neither can the ward against the guardian, except under certain exceptional circumstances not here involved.
See also United States Fidelity & Guaranty Co. v. Jackson, 111 Miss. 752, 72 So. 150 (1916).
However, it may be immediately seen that Alex Anthony is caught on the horns of a dilemma. He filed a response to the first annual accounting consisting of twenty (20) pages and asserted irregularities in the account, inventory, and actions of the conservator relating to his property and to his maintenance, which, if substantiated, would justify sanctions against the conservator. If the ward has no standing to complain about the conduct and the account of his conservator, to whom may he look for relief? Only the lower court and this Court can provide protection and aid to him. Under the holding of the lower court, he may have a just claim, but he has no remedy.
*44 NBC, the conservator, was ordered by the court to pay various expenses and to pay the sum of $500.00 per month to David Van Every, a local attorney, for the purpose of meeting Anthony's daily living expenses. The annual accounting shows at the beginning the following disbursements to Alex Anthony:
July 21, 1982  $5.00; August 2, 1982  $5.00;
September 27, 1982  $15.02; September 28, 1982  $8.25;
October 4, 1982  $30.00; November 23, 1982  $150.00;
January 28, 1983  $16.00; February 23, 1983  $100.00;
March 17, 1983  $100.00; March 18, 1983  $10.00;
April 5, 1983  $100.00; April 19, 1983  $105.00;
April 29, 1983  $100.00; May 4, 1983  $100.00;
May 17, 1983  $100.00.
It is almost incredible that a 95-year-old man, who has accumulated wealth estimated at three hundred thousand dollars ($300,000), has no duty to support anyone, and, at the most, has only a few years to live, be required to exist in such a meager and niggardly fashion.
The record is uncontradicted that the NBC conservator did not file an inventory as ordered by the court on January 27, 1983, and never filed an inventory until filing its first annual account. After the accounting was approved on November 29, 1983, the conservator withdrew its petition of July 8, 1983, for permission to resign as conservator.
The fact that an elderly individual needs a conservator to handle his business affairs in order to protect him against those persons who would, by undue influence and trickery, deprive him of his property, does not necessarily mean that such person cannot be mentally aware of things, or that he has lost his reasoning processes. If the ward has no standing before the court and is unable to enlist the services of an attorney to help him, he may as well be cast as a prey to the wolves, whatever may be their shape or form. The courts must not permit or condone such an unconscionable injustice.
In this situation, the lower court should appoint a guardian ad litem, (probably an attorney) for Alex Anthony and instruct the guardian ad litem to investigate all the matters set forth in the response and cross-bill filed by Alex Anthony and dismissed by the court. An initial investigation of those matters should be made and reported to the lower court and then, where proper and necessary, the court should grant the guardian ad litem permission to file suit against the conservator on behalf of the ward. Miss. Code Ann. § 93-13-27 (Supp. 1984). If, after an evidentiary hearing, the chancellor feels there is merit to the contentions, he should permit the action. Newsom v. Federal Land Bank of New Orleans, 184 Miss. 318, 185 So. 595 (1939). At any rate, there would be a record for appeal to this Court. The lower court could consider from what source the attorney's fees and cost of that action should be paid.[2]

II.
The appellant Robert Anthony, an adult relative of the ward Alex Anthony, complains that he should not have been dismissed from the proceedings. Mississippi Code Annotated § 93-13-281 (Supp. 1984), requires that an adult relative of a ward be given notice of all proceedings. NBC made Robert Anthony a party and then requested the court to deny Robert Anthony the right to participate in the proceedings. On remand, he should be permitted to participate in such proceedings as may develop.
*45 The order of the lower court is reversed and this cause is remanded for the purpose of appointing a guardian ad litem to investigate charges of the ward in his response to the first annual accounting and cross-bill and for such appropriate action as the court may consider. The order is reversed insofar as the dismissal of Robert Anthony is concerned. Further proceedings will be had not inconsistent with this opinion for the protection and maintenance of the ward and for the preservation of his estate.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] The record does not indicate his exact date of birth.
[2] In spite of the procrastinations of the conservator in the filing documents in the conservatorship, on approval of the first annual accounting, the lower court allowed to NBC a conservator fee of $2,250.00 and allowed NBC to recover from Anthony's estate reasonable attorney's fees for representing the conservator in the amount of $5,400.00, all for the first annual account.