GEORGIA PACIFIC RY. CO. *v.* R. M. & J. M. BROOKS ET AL.

1. CHANCERY PLEADING.   *Multifariousness. Code* 1880, § 1886. *Case in judgment.*
    The bill in this case was filed against a railroad company by certain con-
    tractors employed in building the road, and certain of their creditors and
    sub-contractors, who, it is alleged, had obtained liens upon the fund due to
    the contractors by the company.   The bill seeks to have the contractors
    released from all obligation under the contract, because of false and fraud-
    ulent representations by the company in its execution, and because of
    wrongful interference by it with the progress of the work; to recover the
    amount due because of alleged fraudulent under-estimates by the company's
    engineers in charge of the work; to recover the amount of a deposit, and
    reserved percentage of each estimate, retained by the company; to estab-
    lish the liens and adjust the priorities of the said sub-contractors and
    creditors, and for discovery by the company of all needful estimates and
    profiles.   *Held,* on demurrer, that under § 1886, of code 1880, which per-
    mits the uniting in one bill of several distinct and unconnected matters of
    equity against the same defendant, the bill was not multifarious.

2. CONTRACT.   *Fraud therein.   Waiver.   Privity.*
    One who has contracted to do certain work for another cannot complain of
    fraud and deceit of such other in the making of the contract, if after he
    knows, or in the nature of things ought to have known of it, he enters
    upon the work and makes new agreements and engagements, based upon
    the contract, and accepts pay at contract prices.   By such conduct he
    waives the fraud and confirms the contract.   The estoppel in such a case
    extends not only to the contractors but to all who claim under them.

3. EQUITY JURISDICTION.   *Contract for building railroad.   Fraud of engineer in estimates.*

Certain contractors undertook the grading and finishing a section of railroad for a railroad company, under a written contract to perform the work according to given specifications, and to complete it by a fixed time. Monthly payments therefor were to be made, in accordance with the estimates of the company's engineer, which estimates were to be final and conclusive. Before finishing the work, the contractors filed a bill seeking to be relieved from the contract, and to recover sums due them for their work. They alleged, among other things, that the work was impeded by the wrongful conduct and interference in various ways of the engineer, and that the company unjustly refused to extend the time for completing the contract, and that the engineers made false and fraudulent estimates. *Held*, that these allegations gave equity jurisdiction.

4. BUILDING CONTRACT.   *Fraudulent estimates of work. Receipt of pay. Estoppel.*

In such a case, the mere fact that the contractors have received payments on the monthly estimates does not preclude them from complaining of such fraud and errors in the estimates.

5. SAME.   *Estimates by engineer.   When not conclusive.   Fraud.*

Where in a contract for grading a railroad it is stipulated that the engineer of the company shall be the sole judge of the amount and quality of the work done, and his estimates are to be final and conclusive, it is implied that he should be competent, and act honestly.   Neither party to the contract would be bound by such estimates if fraudulent.

6. SAME.   *Estimates of engineer equivalent to an award.   Canceled for fraud.*

Such estimates are in the nature of and to be treated as an award made by a mutually chosen umpire, and the jurisdiction of equity can be invoked to set aside such an award for fraud.

7. EQUITY JURISDICTION.   *Bill retained for full relief.*

Where equity has jurisdiction for one purpose, it will retain the bill for full relief, and adjust the rights of all the parties in regard to the whole subject-matter involved.

FROM the chancery court of Oktibbeha county.

HON. T. B. GRAHAM, Chancellor.

The appellees, R. M. & J. M. Brooks, citizens of the state of Georgia, contracted on June 9, 1888, with the appellant company to build and construct for it eleven miles of railroad in this state. The contract, which is mainly set out in a printed form, contained

.an extended and minute specification of the terms upon which the work was to be performed, and the conditions upon which the price was to be paid.

Before executing the contract, the said appellees signed and delivered to the appellant a written proposal or offer to do the work upon the conditions and according to the specifications of the above mentioned contract and at certain stated prices.

In this proposal the said appellees, among other things, certified that they had personally and carefully examined that portion of the line or division of the projected railroad on which the said work was to be let, and having made such examination they proposed to perform the work on the terms and conditions and according to the specifications set out in the contract, and at prices therein stated.

On the same day the contract was signed on the part of the company and the said appellees.   The provisions of the contract which :are material to be referred to here are as follows :

1. The said contractors were to begin work within fifteen days from the date of the contract, June 9, 1888, and to complete the ·entire eleven miles by November 15, following.   No charge should be made by the contractor for any hindrance or delay from any ·cause in the progress of the work or any portion of it, but it might entitle them to an extension of the time fixed for the completion ·of the work sufficient in the judgment of the engineer to compen-.sate for the detention.   It was further agreed that no claim for ·damages, arising from delay that might occur in obtaining title to right of way should be made by the contractors ; but if title was not obtained in three months from the date of the contract, then ·the contractors might abandon the work upon the portion the title to which could not be acquired.

2. The company reserved the right to make changes in the grades, curves, embankments, etc., as the engineer should deem necessary and proper, subject to an allowance or deduction from ·the price as the work was increased or diminished thereby.

3. The contractors were prohibited from letting or transferring .their contracts or any part of it (except for delivery of work or

material), or withdrawing their constant personal attention from the work, without the written consent of the chief engineer indorsed on the contract.

4. No claim should be made for extra work unless the same should have been done in pursuance of a written order from the engineer in charge, and the claim be made at the time of the first monthly payment after the work was executed, unless the engineer at his discretion should direct the claim to be allowed.

5. The contractors should remove and rebuild without charge any work which the engineer might consider defectively executed.

6. The measurement of quantities should be made in excavation before their removal, except that borrowed material, at the discretion of the engineer, might be measured in the bank. The excavation was divided into three kinds, viz.: earth, rotten limestone and solid rock, and the prices per cubic yard graded accordingly.

7. The company should reserve ten per cent. of the amount due upon each estimate, and in the event the work was not finished in accordance with the specifications, and agreeably to the directions of the engineer under the contract, on or before November 15, 1888, the said reserved percentage should be forever forfeited by the contractors. The company also reserved the right to employ a sufficient force and complete the work, if it became apparent that the work would not be completed by the time agreed upon, the expenses thus incurred to be charged to the contractors.

8. Upon the completion of the work a final estimate by the engineer should be made of the quality, character, and value of the work under the contract, and at every stage of the work it should be subject to the direction, inspection and acceptance of the engineer, who should determine, without appeal, what in any case a fair construction of the contract required to be done by either party; and his measurements, classification and estimates, monthly or final, should be absolutely conclusive upon both parties.

The bill in this cause was exhibited against the appellant by the said contractors, R. M. & J. M. Brooks, certain of their creditors as hereinafter set out, and others who were sub-contractors under them in the building of the said sections of railroad. After set-

ting out the terms of the aforesaid written contract, the bill alleges that the contract as originally drawn in duplicate provided for the building of only ten miles of said road, but the company added another mile to the work to be done, and inserted it in the contract against the protest of said R. M. & J. M. Brooks, who, as they allege, had never examined the work along said mile, and knew nothing of its character; that they were induced to permit the insertion of that mile into the contract on the false and fraudulent representation that the work upon it was easy, and of the same kind as that upon the other ten miles, and that the company would endeavor to find another contractor to take the one mile and release them, and, failing in this, the company would pay for the work thereon such a fair compensation as it could afford to pay under all the circumstances; that the said contractors had nothing to guide them in reference to the character of the work on said mile, except the profiles shown to them by the company at the time, and its statements in reference thereto, all indicating that the work was very desirable; that upon these assurances the contract was signed by them; that it was understood that the contract was not to be effectual until it was also signed by said company, but the company has never signed the contract at all.

The bill further alleges that, contrary to the said profiles and representations, the one mile was in a dense, heavily timbered swamp, through which the road could only be built at an enormous cost. Complainants also allege a similar misrepresentation and fraud on the part of the company in reference to another mile of the work, which they claim they were induced to contract for by the false representations of the company's engineers, and which, because of the wet character of the soil, was very difficult and expensive to construct; that the extra cost and outlay incurred by them in endeavoring to do the work on said two miles was very great, and they are justly entitled to additional compensation therefor.

Several sub-contractors under R. M. & J. M. Brooks have joined in the bill as complainants. The bill sets out the several contracts made with them, the sections of the work undertaken by

each, and the work done by them.   It is alleged that the sub-contractors agreed to fulfill the requirement of the contract as made by the company with R. M. & J. M. Brooks, and the latter agreed to pay each sub-contractor the money collected on his work from the company under the estimates of the engineers, and that each sub-contractor thereby became the equitable assignee of the claim for his own work against the company to the amount agreed to be paid him ; that these sub-contractors have no claims against the contractors, except so far as their claims can be enforced against the company through the contractors, and to do this is the primary object of this suit.

It is also alleged that after said contractors went on the work and had sublet the contract as to some of the sections, the railroad company made alterations in the grade of the road in certain places, which caused additional expense and loss to the sub-contractors as well as the contractors ; that the company also failed to procure right of way to a certain part of the line, and this necessitated a suspension of work, and removal by one of the sub-contractors at a great loss and expense to another place.

The amounts claimed by the several sub-contractors are set out in the bill, and a lien upon the debt due by the defendant to R. M. & J. M. Brooks is sought to be established.

The bill further alleges that before entering into the said contract the said R. M. & J. M. Brooks were required by the company to make a deposit of two thousand dollars as a guaranty that they would fulfill the contract on their part ; that this deposit was not required by the written contract, and besides this the company reserved ten per cent. of the amount due upon each estimate, which by the terms of the contract was not to be paid until a final settlement, and was to be an indemnity to the company for any loss which might be sustained by the refusal or failure of the contractors to finish the work.

It is alleged that the work was delayed because of the wrongful acts and negligence of the engineer of the company in preparing the section for the contractors and staking it off ; that various monthly settlements were made, based on the estimates of the said engineers,

but that the engineers were acting solely in the interest of the company, and made false and fraudulent estimates, intending to cheat and defraud the contractors and sub-contractors, and thus forced them to settle upon false under-estimates ; that because of the losses and reverses due to the willful wrongs and frauds of the company's engineers, the said contractors were forced to abandon the work before its completion, the company refusing to give them any extension of time.

Several general creditors of R. M. & J. M. Brooks, who had sued out attachments and had writs of garnishment served on the defendant, have joined as complainants in the bill.

The prayer of the bill is that the work done be remeasured and re-estimated, and full and proper amounts be allowed therefor ; that the contractors be released from further obligation and work under the contract; that extra pay be allowed for all raised grades ; that the liens by garnishment be enforced, and that the rights and claims of the complainants be fully adjusted between them ; that full discovery be made by the defendant of all profiles and estimates necessary to a proper computation of the amount due ; that liens be fixed upon the amount due R. M. & J. M. Brooks by the company, in favor of each sub-contractor, and in favor of said R. M. & J. M. Brooks upon the said railway, and that the sub-contractors be subrogated to said lien as provided by the statute in reference to the liens of mechanics and contractors.

The defendant demurred to the bill, alleging among other causes :

1. That there was no equity in the bill.

2. That the bill shows that the complainants' remedy at law is complete.

3. The improper joinder of the sub-contractors and creditors of R. M. & J. M. Brooks.

4. That the bill is multifarious in that it seeks relief based on both a repudiation and an acceptance of the written contract, and because it unites distinct and unconnected matters between different parties.

5. The complainants do not offer to do equity.

6. The bill shows an abandonment of the contract by the contractors and yet claims the value of their services.

7. The various claims and demands of the complainants are re-pugnant to the written contract, and the bill itself shows that under the contract and the alleged facts they have no right to relief.

The demurrer was overruled, and the defendant appealed.

*Wiley N. Nash* and *James Weatherly,* for the appellant.

1. The written contract must govern. It cannot be rejected in part and accepted in part. 2 Pom. Eq., § 916, note 4, and § 897, note 1 ; 64 Miss. 258.

The bill is multifarious. It should not claim for work done at contract prices, and also extra compensation not provided in the contract. *Ranger* v. *Great Western Ry. Co.,* 5 H. L. Cas. 72, s. c. 27 Eng. L. & E. Rep., §§ 35, 38, 53, 54, 56, 58, 66, and 67 ; 2 Pom. Eq., §§ 915, 916. Complainants, however, ask for a *quantum meruit* when that suits them best, and the contract price when that suits them best, and offer to restore nothing.

This is inadmissible. *Gould* v. *Cayuga Co. Bank,* 99 N. Y. 333 ; 3 Am. & Eng. Encycl. of Law, 932, note 2.

2. Having voluntarily abandoned the work without notice to quit by the defendant, they cannot disavow the obligation of the contract and yet recover the reserved percentage. After discover-ing the fraud, they still acted on the contract as subsisting and binding and thus waived all right to relief for the fraud. *Herrick* v. *R. R. Co.,* 27 Vt. 673 ; 2 Pom. Eq., § 897 ; *Hanson* v. *Field,* 41 Miss. 715 ; *Edwards* v. *Roberts,* 7 S. & M. 544. The bill cannot be maintained as a bill to cancel the contract for fraud, and for damages. 2 Pom. Eq., § 897, note 1.

3. Nor can the bill be sustained as a bill to recover the value of work upon a *quantum meruit,* and for an accounting. 29 N. J. Eq. 175 ; 44 Miss. 717 ; 1 Pom. Eq., § 178 ; *Herrick* v. *R. R. Co., supra;* nor as a bill for discovery. 48 Miss. 343 ; 58 Ib. 643.

4. The remedy at law is adequate. *Strong* v. *Krebs,* 63 Miss. 338 ; *Learned* v. *Holmes,* 49 Ib. 290 ; 2 Pom. Eq., §§ 911, 914. The accounting is not necessary nor is it properly asked for. If there are any data not accessible to complainants, discovery can be had at law as well as in equity.

5. Misjoinder of parties. The sub-contractors and general

creditors of the contractors are improperly joined as complainants. The court cannot at the same time adjudicate the claim of the contractors with the company and the claim of their creditors against them. If they were judgment creditors the case might be different.

6. The bill cannot be sustained on the theory of preventing a multiplicity of suits. To sustain such a theory the complainants, Brooks, would have to be threatened with many suits by their creditors and sub-contractors, and then might enjoin them and perhaps join this appellant as a defendant. 1 Pom. Eq., § 243 et seq.

7. The bill shows that the contractors proceeded to perform the work without objection because of the alleged fraud or the extra expense. The circumstances are not sufficient to raise a presumption of an implied contract to pay extra. 75 Ill. 496 ; 52 Pa. St. 214; *Barker* v. *R. R. Co.*, *supra;* 28 Conn. 491. There should have been a prompt disaffirmance. 2 Pom. Eq., § 897.

*Wiley N. Nash* and *James Weatherly* each made an oral argument.

*Frank A. Critz,* for the appellees.

1. Misjoinder of parties. The sub-contractors and attaching creditors of R. M. & J. M. Brooks are proper parties to the bill. They have acquired liens on the fund, and their rights are so interwoven with those of the said contractors and with the contract that they can get no relief except by an enforcement of the contract. This point is made more certain as to the extra pay for the raised work. Under the sub-contracts, this goes to the sub-contractors. A court of equity will allow all parties brought into one suit, that equity may be fully meted out to each one. Besides it is alleged that each sub-contractor became the equitable owner of the amount due on his claim. The bill seeks to reach for them this amount and to enforce for them a statutory lien. *Herrick* v. *Belknap*, 27 Vt. 673.

2. Fraud in construction of contract.

Courts of equity will relieve against fraud by the agents of railways in building contracts, the same as in other cases of

fraud, and this, after the work is done. *Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250 ; 1 Redfield Law of Ry. 443 ; *Herrick* v. *Belknap, supra ; Ranger* v. *Ry. Co.*, 5 H. L. Cas. 72, s. c. 27 Eng. L. & Eq. 35.

The contractors were not bound to abandon the contract or rescind after discovering fraud, as they could not then be put in *statu quo*. Kerr on Fraud 330 ; *Gould* v. *Bank*, 99 N. Y. 336 ; *Krumm* v. *Beach*, 96 Ib. 406 ; *Whitney* v. *Allaire*, 1 Ib. 305 ; *Peck* v. *Brewer*, 48 Ill. 60 ; 24 Am. & Eng. Ry. Cas. 343.

It is objected that complainants sue for a *quantum meruit*. This is a technical phrase and only applies to a suit at law. In a court of equity it is immaterial what technical formalities are observed. The court will " look through the shadow for the substance." The proper measure of damages is the difference between the contract price and the actual cost of the work, and this is what we claim. *Krumm* v. *Beach*, 96 N. Y. 406 ; *Dimmick* v. *Lockwood*, 10 Wend. 155 ; *Whitney* v. *Allaire, supra*.

3. The contract is a legal one, but the fraud of the engineers vitiates their action, and gives ground for equitable relief. Where the decisions of the engineer shows fraud, partiality, or incompetency, or that he is in collusion with either party, his estimates are not binding, and the party defrauded is released from his supervision. *R. R. Co.* v. *March*, 114 U. S. 550 ; *Sweeney* v. *U. S.*, 109 Ib. 620 ; *Kihlberg* v. *U. S.*, 97 Ib. 501 ; *U. S.* v. *Robeson*, 9 Peters 327 ; Pierce on Railroads 382 ; 2 Story Eq. Jur., § 1457 a ; *Hudson* v. *McCartney*, 33 Wis. 342 ; *Kistler* v. *R. R. Co.*, 88 Ind. 460 ; *R. R. Co.* v. *Woods*, 14 Grat. 461 ; *McMahon* v. *R. R. Co.*, 20 N. Y. 467 ; 12 Am. & Eng. Ry. Cas. 317.

4. Extension of time. The company was bound to extend the time in which to do the work, as the delays occurred because of its own misconduct and fraud. *R. R. Co.* v. *Donnegan*, 34 Am. & Eng. Ry. Cas. 320. Such extension was expressly provided for by the contract, and the failure of the company to extend the time was such a breach of the contract as released the contractors from obligation under it. The arbitrary action of the engineer in putting an extra force on the work forfeited the contract. 34 Am. & Eng. Ry. Cas. 122. The same is true because of the failure to

make proper monthly estimates and payments.   *Bugg* v. *Moore,* 1 Atl. Rep. 324 ; *Reybold* v. *Voorhees,* 37 Pa. St. 116 ; 2 Parsons' Con. 522, 523 ; *Merrill* v. *R. R. Co.,* 16 Wend. 588.

5. Measure of damages.   Even if the contractors committed the breach of the contract, the company is bound to pay over all but the reserve fund of ten per. cent.   This is liquidated damages and conclusive against the claims of both where the damages are uncertain and incapable of ascertainment, unless the amount is set aside by a court of equity as excessive.   24 Am. & Eng. Ry. Cas. 349, note ; 3 Parsons' Con. 156 ; *Foley* v. *McKeegan,* 4 Iowa 1 ; *Wolf* v. *Des Moines,* 64 Ib. 380 ; *Easton* v. *Canal Co.,* 13 Ohio 79 ; *Pierce* v. *Jung,* 10 Wis. 26 ; *Farle* v. *Buck,* 11 Pa. St. 469 ; *Geiger* v. *R. R. Co.,* 41 Md. 4 ; *Durnel* v. *Brown,* 54 Me. 468 ; *Hennessy* v. *Farrell,* 4 Cush. 268 ; *R. R. Co.* v. *Rust,* 19 Fed. Rep. 239.

*F. A. Critz* also made an oral argument.

ARNOLD, C. J., delivered the opinion of the court.

Without attempting to define the general rule, if there is any on the subject, as to what constitutes multifariousness in a bill in chancery, it is sufficient for the purposes of this case to say, that § 1886 of the code declares, that " the uniting in one bill of several distinct and unconnected matters of equity, against the same defendants, shall not be an objection to the bill," and that under this provision of the code, the bill here, is not objectionable as being multifarious.

The bill shows no cause for relief on account of the contractors being defrauded in making the original contract.   If they were deceived and defrauded in this respect as alleged, they knew it, or in the nature of things ought to have known it before they commenced work under the contract, and they waived the fraud and confirmed the contract by making new agreements and engagements based upon it, and by accepting pay at the contract price. *Hanson* v. *Field,* 41 Miss. 712 ; *Edwards* v. *Roberts,* 7 S. & M. 544.   The contractors and those claiming under them must abide by the contract as made by the parties, and as subsequently ratified and approved by their conduct.

By the terms of the contract, the contractors were to be allowed an extension of time, to be determined by the engineer of the company, for the completion of the work, if its progress was from any cause hindered or delayed, provided they gave the engineer in charge immediate notice in writing of the cause of the detention. It is alleged in the bill that the work was impeded by the wrongful conduct of the company and its engineers, in various respects, and that immediate notice thereof in writing was given to the engineer in charge, and that he and the company arbitrarily and unjustly refused to allow any extension of time for the completion of the work.

It appears also from the contract that monthly estimates of the relative value of the work to be done by the contractors, were to be made by the engineer of the company, and that his estimates, monthly and final, were to be absolutely conclusive on both parties. And it is alleged in the bill that the engineers were prejudiced against the contractors and partial to the company, and willfully and fraudulently made improper and under-estimates of the work done, and that in other matters confided by the contract to their judgment and decision, the action of the engineers of the company was characterized by fraud and willful wrong.

We are of opinion that these allegations gave equity jurisdiction, and that receiving payment by the contractors on the monthly and partial estimates does not preclude them from complaining of the alleged fraud and errors in such estimates, in violation of the contract.

The stipulation in the contract that the engineer of the company should be the sole judge of the estimates implies that he should be competent and act honestly. Neither party would be bound by the fraudulent estimates made by the engineer in such case. 2 Wood on Railways, § 277 ; *Herrick* v. *Belknap*, 27 Vt. 673 ; *B. & O. R. R. Co.* v. *Polly*, 14 Gratt. 447; *B. & O. R. R. Co.* v. *Laffertys*, Ib. 478.

Under the contract the determination of the estimates by the engineer was in the nature of, and must be treated as, an award made by an umpire, selected by the parties for that purpose, and

the jurisdiction of equity to set aside an award for fraud or cor-
ruption cannot be questioned.   2 Pomeroy's Eq. Jur., § 919; 2
Story's Eq. Jur., §§ 1451, 1457 *a*, 1457 *b*, and authorities, *supra ;*
Code 1880, § 2413.   And the court having jurisdiction for one
purpose, will retain the bill for full relief, and adjudicate the rights
of the parties in regard to the whole matter.   *Hunt* v. *Knox*, 34
Miss. 655 ; *Gilliam* v. *Chancellor*, 43 Ib. 437.

*Decree affirmed and cause remanded.*