NEWSOM *et al. v.* FEDERAL LAND BANK OF NEW ORLEANS.

(Division B.  Jan. 16, 1939.)

[185 So. 595.  No. 33288.]

Wells, Wells & Lipscomb, Watkins & Avery, and **Conner & Nobles,** all of Jackson, and **John W. Kyle,** of Sardis, for appellants.

Herbert Holmes, of Senatobia, and James McClure, of Sardis, for appellee.

Argued orally by **Herbert Holmes**, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The situation involved in this appeal grows out of transactions which were also involved in the case of the Federal Land Bank of New Orleans et al. v. Newsom et al., 175 Miss. 134, 166 So. 346. On the remand of that cause to the Chancery Court of Panola county a receiver was appointed by the Chancery Court, all parties to the present suit being likewise parties to that suit, and the attorneys representing them being in court when the cause was remanded. When the matter came up on the remand of the cause, the Chancellor indicated that some action should be taken to preserve the rights and interests of the minors, and that he would probably appoint a receiver to take charge of the lands involved in the former suit, and pay off the amounts due the Federal Land Bank for taxes upon the lands, to which the bank had become subrogated by the decision of this Court on the former appeal.

In order to present the issues and questions for decision clearly, it will be necessary to make a rather comprehensive statement of the facts and pleadings, as reflected in the record.

The minors, Mary Jane Newsom and Nancy Cavett Newsom, became owners in fee simple, on the death of their father, Bruce D. Newsom, of land in Panola county, Mississippi, described as section 7, township 8, range 9 west, less and except the south half of the southwest quarter thereof. It appears that their title to this land was derived from Dr. Thomas C. Newsom, who executed a will, which was recorded in Tate county, where Dr. Thomas C. Newsom lived, while the land is situated in Panola county, Mississippi. In his will he devised a life estate to Bruce D. Newsom, which terminated at his death, and the remainder interest in fee simple was vested in the two heirs of the body of Bruce D. Newsom, the appellants here, Mary Jane and Nancy Cavett Newsom. Dr. Thomas C. Newsom died July 13, 1906, and his will was probated shortly after his death, and was recorded in the record of wills of that county. In his will he left to his son, Bruce D. Newsom, a life estate in the lands. His son died in the summer of 1928. Bruce D. Newsom conceived that he had a fee simple title in the lands, apparently on the theory that the will of Dr. Thomas C. Newsom violated our two-donee statute, Code 1930, section 2117; and it seems that others shared in such belief; but in fact Bruce D. Newsom only obtained a life estate in the lands involved, as was held in the case of Federal Land Bank v. Newsom, 175 Miss. 114, 161 So. 864, 166 So. 345; see, also, Id., 175 Miss. 134, 166 So. 346.

In 1924 Bruce D. Newsom applied to the Federal Land Bank of New Orleans for a loan of $20,000, to be secured by a deed of trust on the 560 acres above mentioned. An abstract of title was prepared for the bank, which did not reflect the will above mentioned; but it is said that two citizens made affidavits to the effect that Dr.

Thomas C. Newsom died intestate, and the abstract did not contain a reference to, or reflect the existence of, the will above mentioned; and the loan was made by the bank.

The deed of trust given by Bruce D. Newsom was also signed by his wife, Etta Cavett Newsom. After the death of Bruce D. Newsom a will executed by him was probated, it being drawn by him and an attorney who was a personal friend—Newsom. himself being an attorney at law. The will created a trust of the lands for the purposes mentioned therein. The two appellants, Mary Jane and Nancy Cavett Newsom, had insurance which was for their benefit; and after the death of their father administration was taken on his estate in Grenada county, where he lived, and guardianship of the two appellants was also taken in that county. It is said that the will left by Newsom was a complicated one, and that members of the family, and the bank which became guardian and executor, and trustee under the will—the Jackson-State National Bank—thought that Bruce D. Newsom was the owner in fee simple of the land, and that the only estate that the appellants, Mary Jane Newsom and Nancy Cavett Newsom, had was insurance in the sum of $10,000. left by their father in their behalf.

The Jackson-State National Bank administered the estate of Bruce D. Newsom, and declined to continue as a trustee after completing the administration; and thereupon the Chancellor appointed Mrs. Mary Etta Cavett Newsom, the widow of Bruce D. Newsom, and L. Barrett Jones, of Jackson, Mississippi, as trustees, and they qualified as such in the said court, and undertook to farm the land, as directed in the will. But for some reason the operation of the farm under the trust was not successful, and the land here in question was permitted to be sold for taxes. The period for the redemption from the tax sale approaching an end, the Federal Land Bank. to protect its interest, paid the taxes, and thereafter filed

its bill to have a construction of the will of Dr. Thomas C. Newsom, construed, and prayed that if the will, when construed, did not hold a fee simple title to be vested in Bruce D. Newsom, it be subrogated to the rights of the taxing authorities for a lien for the taxes.

The Jackson-State National Bank also resigned as guardian of the appellants, Mary Jane and Nancy Cavett Newsom, and the Deposit Guaranty Bank & Trust Company was appointed guardian of the minors. The Jackson-State National Bank resigned as such guardian in 1933, and the Deposit Guaranty Bank & Trust Company succeeded to it in January, 1934, and has been the guardian of appellants since that time. However, as guardian, the bank failed to discover and take charge of the lands here involved, and to rent or farm them in the interest of the minors, its wards.

On the 8th day of August, 1936, a decree of the Chancery Court of Panola county was entered in the case of the Federal Land Bank v. Newsom et al., supra, adjudicating the title to the 560 acres of land, and appointing A. M. Balentine as receiver, who collected rents for the year 1936 in the sum of $3000, and reported it to the Chancery Court. He also rented the lands for 1937. On the 28th of January of that year Ballentine, the receiver, filed a petition in the Chancery Court of Panola county, requesting permission to file a suit in the Chancery Court of Grenada county against the Jackson-State National Bank and the Deposit Guaranty Bank & Trust Company, both of Jackson, alleging in the petition that he had been appointed receiver on the 8th day of August, 1936, to take over and operate the lands above mentioned, which lands were situated in the first judicial district of Panola county, describing the lands as above. He alleged that from an investigation made by him, he found that on June 17, 1928, the minors became vested with the fee simple title in the aforesaid lands, as well as the right to possession of them, and that they had owned

the lands since said date, and still owned them; and that he had taken possession thereof, and was at that time in possession of said lands in their behalf.

He alleged that the Jackson-State National Bank was appointed legal guardian over the estate of said minors by a decree of the Chancery Court of Grenada county in 1928, and that the bank then qualified and acted as such guardian until 1934, when it was discharged as guardian by the decree of the said court; that during the time the bank acted as guardian over the estate of the minors, it wholly and negligently failed to make any effort to farm the said lands, except for the year 1929, and the latter part of 1928—or to rent the lands, or to collect any rent from any person administering or using them after 1928, and failed to account to said minors for reasonable rent on said lands while acting in its capacity as guardian, notwithstanding the fact that the lands were farmed in the latter part of 1928, from and after the date of its appointment as legal guardian of the minors on July 2, 1928, as well as during the year 1929; and notwithstanding the fact that large crops were produced upon the land during the years 1930, 1931, 1932 and 1933, throughout which time it was acting as such guardian. Produce was grown by other parties during that period, from which the minors received nothing, due to the inattention and negligence of the guardian bank. It was also charged that the said guardian failed to pay the taxes lawfully levied and assessed against the land here in question, despite the fact that it had on hand at all times ample funds belonging to the minors, with which to pay them; and that when said lands were sold for delinquent taxes it failed to redeem them; that another person redeemed the lands from the tax sale for the benefit of the minors, two days before the title would have matured in the state, paying therefor the sum of $508.48 on account of taxes, penalties, interest, damages and costs; which amount has been charged to the

minors and against their lands, being thereby lost to them through the guardian's negligence and inattention to its trust; and that in the opinion of the receiver the minors are entitled to recover from the defendant Jackson-State National Bank the sum of $508.48 paid for redemption of the lands from the tax sale; and also a fair cash rental value covering the period of its guardianship, stating that the bank, as such guardian, knew, or was charged with legal notice, that the minors owned the land, and were entitled to its possession, and to the rents and profits arising therefrom during the entire period of its guardianship over the said estate. And the receiver avers that a cause of action has accrued to said minors because of the alleged negligence of the guardian, and recommends to the Court that he be authorized to enter suit as next friend of said minors against the bank, and as receiver, for the recovery of the aforesaid rents and damages.

It is also charged that the Deposit Guaranty Bank & Trust Company, a trust corporation of Hinds County, Mississippi, was appointed as legal guardian over the estates of Mary Jane and Nancy Cavett Newsom, minors, by a decree of the Chancery Court of Grenada county on February 3, 1934, as successor in trust to the Jackson-State National Bank, and immediately qualified as such guardian, and has been acting as such since that date; that on the date of its appointment and qualification as such guardian, said minors owned the lands, and were entitled to the rents and income from them, and still are entitled thereto; that the Deposit Guaranty Bank & Trust Company knew, or was charged with legal knowledge of such ownership, and with the duty of renting and farming, or collecting rents due on said lands during the period of its guardianship, but had wholly failed and neglected to do so during the years 1934, 1935, and 1936, or to collect any rents from those in possession, notwithstanding the fact that the lands were farmed, and large

crops were produced thereon, during the entire period of time by persons unknown to the receiver; and had wholly failed to account to said minors on its annual guardian's account filed with the court, for a fair rental value of such lands for said period of time. The receiver petitioned that he be authorized to file a suit in said guardianship in the Chancery Court of Grenada county, Mississippi, as next friend of the minors, and as receiver of their estate, against the Deposit Guaranty Bank & Trust Company, as legal guardian of the minors' estate, by way of, and in the nature of exceptions to the annual accounts filed with the court by the bank, as such guardians; and to charge the guardian with the fair cash rental value of said lands for the years 1934 and 1935, which it is charged has never been collected or accounted for; the petitioner having collected the rents for the year 1936, as has been stated.

It is further charged that it was the duty of the guardian bank to be responsible for the sum of $729.43, up to and as of January 18, 1937, because of its failure to pay the taxes on the lands belonging to the minors, which were lawfully levied and assessed for the year 1933, in consequence whereof they were sold on September 18, 1934, for delinquent taxes, and have not been redeemed at the present time, resulting in the accruing of interest, penalties and damages as of January 18, 1937, although the guardian had on hand ample funds with which to pay the taxes and to redeem the lands from said tax sale, and still has; and that in consequence the amount has been lost to the minors through the inattention and negligence of the guardian bank; and the receiver recommends that he be authorized to file suit against the Deposit Guaranty Bank & Trust Company as next friend of the said minors, and as receiver for their estate, appointed by the court.

The Chancery Court entered a decree, allowing the receiver to file the suits, as requested, against both the

Jackson-State National Bank and the Deposit Guaranty Bank & Trust Company. Whereupon A. M. Ballentine, as receiver and next friend of the minors, heirs to the property, filed suit in the Chancery Court, where the guardianship was pending, and served process upon the various parties above mentioned, the Jackson-State National Bank and the Deposit Guaranty Bank & Trust Company, in a separate motion or petition, adopting the allegations in the motion of the Newsoms, Mary Etta Newsom, and the two minors, Mary Jane and Nancy Cavett Newsom, wards of the guardian, by motions and pleadings urged the court to set aside its former orders in challenging the power of the court to appoint the receiver and to authorize him to bring suit against them. The petition of the minors and their mother, Mrs. Mary Etta Newsom, stated that the minors are over fourteen years of age, that Mrs. Mary Etta Newsom is their mother and natural guardian; that on the day the decree was entered there was an acting guardian, duly and legally appointed, over the estate of the minors, naming the Deposit Guaranty Bank & Trust Company, of Jackson, Mississippi, as the guardian chosen by their mother, and that this legally appointed guardian was in full discharge of its duties; that the court was without power, against their will, to take part of the estate out of the control of the said guardian and turn it over to the receiver; charging that the decree of August 8, 1936, under which Ballentine was appointed receiver, was null and void; that the movants were given no notice of the proceeding to appoint the receiver, nor of the precedent steps which were required by law; and that they were never given an opportunity, if another receiver was to be appointed, to choose their guardian; that the Deposit Guaranty Bank & Trust Company had the sole custody and management of their entire estate, including the lands in Panola county, described in the decree, and that under the rights conferred by the statute, they now

select and choose the Deposit Guaranty Bank & Trust Company to manage, direct and operate all of their estate, and decline to consent that any part of their estate be administered by A. M. Ballentine, the receiver aforesaid. They aver that the decree of August 8, 1936, was null and void, was not beneficial to their estate, should be in part annulled and rescinded, and that in place of A. M. Ballentine, receiver, the Deposit Guaranty Bank & Trust Company should take charge of the lands in question.

The said motion or petition further averred that the decree in cause 3619, Chancery Court of the First Judicial District of Panola county, dated January 28, 1937, authorizing the receiver, A. M. Ballentine, to file suit in the Chancery Court of Grenada county in the names of the movants, Mary Jane and Nancy Cavett Newsom, against the Jackson-State National Bank, of Jackson, Mississippi, for the recovery of certain lands alleged to be assets of their estate, should be decreed to be null and void, and cancelled. That if any rights exist in favor of the minors, they should be propounded by their guardian, so chosen, the Deposit Guaranty Bank & Trust Company, which is now the legally qualified guardian of the movants, the two minors.

The movants further charge that the order of the decree of January 28, 1937, that the receiver, A. M. Ballentine, should proceed against the Deposit Guaranty Bank & Trust Company, legally qualified guardian of the minors, by way of exception to its annual accounts theretofore filed, to recover certain items alleged to belong to the estate of the minors, Mary Jane and Nancy Cavett Newsom, was unnecessary and void.

The Deposit Guaranty Bank & Trust Company filed its motion to set aside and annul, in part, the decrees entered on August 8, 1936, and January 28, 1937, above referred to, averring that every allegation in the motion filed by Mary Etta Newsom, Mary Jane and Nancy Cavett Newsom was adopted and approved by it.

The Jackson-State National Bank, through its solicitor, moved the court to set aside and annul, in part, the decrees entered on August 8, 1936, and January 28, 1937, and adopted the allegations of the motion filed by Mary Etta Newsom and the minors.

The court, on the hearing of the said motions to set aside the former decrees granting authority to A. M. Ballentine, overruled same, and granted an appeal to settle the principles of the case.

Insofar as the decree appointing a receiver is concerned, when the cause was remanded from this Court to the Chancery Court of Panola county, all the parties were represented by attorneys who had represented them in the litigation with the Federal Land Bank; and on the Chancellor's indicating that some action should be taken to save the land belonging to the infants from tax sales about to mature, they agreed upon the appointment of a receiver, and agreed upon the receiver actually appointed. The latter entered into the discharge of the duties imposed, operating the plantation, and discharging the tax lien to which the Federal Land Bank was subrogated. He handled the receivership in a successful manner, resulting in benefit to the said minors, and saving their property for them, of which the appellants cannot now complain. They cannot, at this stage, after having so agreed, and all parties being represented in court, attack the action of the court in that regard.

Furthermore, the Federal Land Bank was a party interested in the proceedings, and was adversary in its rights to the interests of the minors, and of their mother; and of the guardian and bank which had acted as administrator, and the persons who had acted as trustees under the will of Bruce D. Newsom.

The Constitution of the state vests in the Chancery Court full jurisdiction in all matters named in section 159, among which are matters testamentary and of ad-

ministration, minors' business, and all matters of equity. The Constitution gives to the Chancery Court full and complete jurisdiction of these subjects, and nothing further in that regard remains to be vested, because as to the subject matters named the jurisdiction is full and complete, and indicates that where a court takes hold of the subject, it should dispose of it fully and finally. Bank of Mississippi v. Duncan, 52 Miss. 740; Georgia Pac. R. Co. v. Brooks, 66 Miss. 583, 6 So. 467; Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615.

By section 352, Code of 1930, the Chancery Court is given jurisdiction to determine all matters in estates administered, reading as follows: "The court in which a will may have been admitted to probate, letters of administration granted, or a guardian may have been appointed, shall have jurisdiction to hear and determine all questions in relation to the execution of the trust of the executor, administrator, guardian, or other officer appointed for the administration and management of the estate, and all demands against it by heirs at law, distributees, devisees, legatees, wards, creditors, or others; and shall have jurisdiction of all cases in which bonds or other obligations shall have been executed in any proceeding in relation to the estate, or other proceedings, had in said chancery court, to hear and determine upon proper proceedings and evidence, the liability of the obligors in such bond or obligation, whether as principal or surety, and by decree and process to enforce such liability."

It would seem that this section is full, specific and definite, and authorizes the court in which letters of administration or of guardianship have been granted, to hear and determine all questions in relation to the execution of the trust of the executor, administrator, guardian or other officer appointed for the administration and management of all the estate, and all demands against it by heirs at law, distributees, devisees, legatees, wards, cred-

itors or others; "and shall have jurisdiction of all cases in which bonds or other obligations shall have been executed in any proceeding in relation to the estate, or other proceedings had in said Chancery Court, to hear and determine upon proper proceedings any evidence, the liability of the obligors in such bond or obligation, whether as principal or surety, and by decree and process to enforce such liability."

Under the constitutional provisions, giving the Chancery Court full jurisdiction, with this section specifically authorizing it to entertain suits brought in the court in which the matters involved are being administered, its authority to act cannot be doubted. The Chancellor, in the administration of estates and guardianships, may, of course, supervise and inquire into the management. He need not personally conduct the inquiry, or consult witnesses and prepare the papers necessary to such supervision, but may appoint such assistants as may be required for the proper development and conduct of such cases, under his supervision. The Chancery Court had full jurisdiction of proceedings against administrator's executors or guardians and sureties, on their bonds, to enforce claims or other liabilities against them, in his own court. Lawson v. Dean, 144 Miss. 309, 109 So. 801, 110 So. 797. It will be noted that in the present case the receiver filed a petition both as receiver and as next friend, and presented the application to the court for its approval, and that before attempting to file suit he secured the approval of the court in specific statements, making the proposed bill an exhibit to his application to bring the suit in the Chancery Court in which the guardianship was pending, and in which the administration had been conducted, and in which the trust created by the will of Bruce D. Newsom was being administered.

The Chancery Court could make the inquiry under this proceeding by a bill of this nature, to develop the case and see whether or not the guardian was conducting its

guardianship as it should; and whether the guardian had been diligent to a reasonable degree in administering the guardianship and the property belonging to the ward. The property belonging to the minors had been used by the administrator and trustee, and was being so used until the litigation in the prior suit was decided, as a part of Bruce D. Newsom's estate, instead of being operated as a part of the estate of the minors by their guardian. The inquiry might not develop a case demanding the removal of the guardian, and the appointment of another. Certainly the Chancery Court in which the guardianship was being administered had the authority itself to conduct the inquiry, or to permit it to be conducted by agencies selected by that court, in the exercise of a sound and reasonable discretion.

It will be noted from the statement of the case, and the pleadings, that the guardian, on discovering that the lands, in fact, belonged to the wards, and not to the estate of Bruce D. Newsom, did not then pay the taxes due, or offer to do so; but that they had not paid the taxes, and had not discovered the interest of the wards in the property prior to the filing of the bill by the Federal Land Bank, in the case of the Federal Land Bank v. Newsom et al., supra, although the petition for the privilege of bringing the suit against the guardian averred that the guardian had ample funds in its possession, and under its control, with which to pay the taxes, and had not done so; and that it had not been diligent in taking charge of the lands belonging to the wards, renting or leasing them, or operating the plantation under the direction of the court for the benefit of such wards.

It also appears that the defendant, the Jackson-State National Bank, when it was appointed administrator or executor and trustee under the will of Bruce D. Newsom, had not discovered the existence of the will of Dr. Thomas C. Newsom, father of Bruce D. Newsom, in which the latter was given a life estate only, with remainder to the two children; but had proceeded without consulting the

records of the county where Dr. Thomas C. Newsom died, to see whether or not he died intestate. It would seem that an executor or administrator would inquire in the county of the decedent's residence as to whether or not he left a will, where lands came by inheritance and not by deed or other contract. Whether reasonable inquiry would have disclosed all the facts in the beginning of the administration of the estate of Bruce D. Newsom and the administering of the trust, is of course a question for the decision of the court.

It was also the duty of the guardian to make reasonable inquiry as to the property in the State, belonging to the wards. The guardian is not perhaps required to find out everything that was discoverable, for there might exist property which could not be found through reasonable efforts. These are questions for the Chancery Court, in administering the estate, to deal with in proper cases.

It furthermore appears from the record in this case that Etta Cavett Newsom, mother of the minors, has signed the deed of trust with her husband, warranting the title of the land to be in him, and that he had created a trust estate in the lands for her benefit; and that consequently she held an adverse interest to that of the minors, and for that reason would not necessarily be entitled to the guardianship of the minors, or to select a guardian for them.

It also appears in the pleadings in the court below, in which suit was authorized to be instituted, that the Deposit Guaranty Bank & Trust Company had become a party whose interest appears to be adverse to that of the wards, or at least might be found to be so on inquiry and adjudication. The same is true of the Jackson-State National Bank. It was proposed in this suit to establish a claim against it in favor of the minors, because of its dealing with the administration of the lands in the estate of Bruce D. Newsom; and that it had resigned its office as trustee, after the completion of the administration; that the trustees succeeding it had op-

erated the lands as of the estate of Bruce D. Newsom, rather than as lands belonging to the minors.

It further appears in the evidence that when suit was filed against the two banks as defendants and trustees, the attorneys of the banks, or one of them, made arrangements with an attorney to represent the minors, and brought the minors and their mother and the attorneys into contact, by which, through these discussions and negotiations, a motion was filed by the minors, through their mother acting with them, to set aside the order appointing the receiver, and to set aside the action authorizing the receiver, as next friend, to bring suit.

It does not appear that there was any known hostile adverse interest at the time the receiver was appointed by the attorneys representing the minors, and the attorneys representing the banks, defendants here; and that by an arrangement through the respective attorneys, one of the attorneys representing the minors also represented the guardian of the minors in the proceedings on the remand of the former case; all of which was done in good faith, and without knowledge on the part of the attorney of any inconsistent relationship. Consequently there was no criticism, unless it be that there was an insufficient investigation of the facts, which though unknown, might thereby have been discovered.

This is not a case where suit was sought to be brought against a guardian in another court than that in which the guardianship was being administered. The statute above quoted contemplates that the Chancery Court in which the guardianship is being administered shall draw to itself the decision and control of all litigation affecting the guardianship, between the wards and the guardian, or between third persons and the guardian, or against the wards through the guardian.

No suit, of course, can be maintained under the statute above mentioned, without application having been presented to the court, setting up some reasonable necessity for the bringing of such suit. Consequently, such

cases as U. S. F. & G. Co. v. Jackson et al., 111 Miss. 752, 72 So. 150, Davis v. Davis, 135 Miss. 214, 99 So. 673, and Huston v. King, 119 Miss. 347, 80 So. 779, are not applicable.

It is easily conceivable that conditions may arise during the guardianship of wards, or during the administration of estates, which make an investigation of the affairs of such guardianship or administration appropriate and desirable, or even necessary. And the court has full power to permit, under appropriate proceedings and under its direction and control, the institution of such proceedings, inquiry or suit.

In certain cases it would be unjust, inefficient and harmful to remove a guardian or administrator prior to such inquiry. Of course, where an inquiry is conducted in a court in which an administration is proceeding, where the court has full control and authority to grant it, it may require to be done whatever is required by the law, in justice to the parties. Such power is necessary to the proper and efficient administration of such estates through executors, administrators or guardians, or trusts and trustees. Of course, the facts here are not fully developed—we do not know at this stage whether the guardian should be removed, or what, if any, disciplinary orders or decrees might properly be made. We believe that the proceedings in the court below are authorized by law, and are justified on the pleadings and on such proof as has been presented here; and the case should be proceeded with until the proper facts are learned, and the proper decrees rendered.

Consequently the judgment, of the court below is affirmed, and the cause remanded for further proceedings.

Affirmed and remanded.